# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**DALLAS STADEN**                                         **CIVIL ACTION**

**VERSUS**                                                     **NO. 16-310-BAJ-EWD**

**TROY PORET, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on May 22, 2023.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**DALLAS STADEN**                                        **CIVIL ACTION**

**VERSUS**                                              **NO. 16-310-BAJ-EWD**

**TROY PORET, ET AL.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before this Court is the Petition for Writ of Habeas Corpus by a Prisoner in State Custody ("habeas petition"), filed by Dallas Staden ("Staden").[1] It is recommended that Staden's habeas petition be denied. The Court is barred from reviewing his claim of cumulative error and certain arguments regarding a violation of his Sixth Amendment right to self-representation, which are procedurally defaulted, and Staden's other claims fail on the merits. There is no need for oral argument or for an evidentiary hearing.

## I.    PROCEDURAL HISTORY

Staden was charged by Amended Bill of Information in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana with attempted second degree murder and armed robbery.[2] After a bench trial in November 2010, Staden was found guilty of armed robbery and not guilty of attempted second degree murder.[3] Staden was arraigned as a habitual offender on May 16, 2011 and sentenced to forty nine and a half years at hard labor without the benefit of probation, parole, or suspension of sentence.[4] Staden filed a direct appeal with the Louisiana First Circuit Court of Appeal ("First Circuit"), which affirmed his conviction and

---

[1] R. Doc. 1.
[2] R. Doc. 35-1, p. 23.
[3] R. Doc. 35-5, pp. 127-130.
[4] R. Doc. 35-5, pp. 147-168.

sentence on May 3, 2012.[5] The Louisiana Supreme Court denied Staden's writ application on November 16, 2012.[6]

Staden filed a *pro se* application for post-conviction relief ("PCR application") at the trial court on or about April 30, 2013.[7] On July 25, 2013, the Commissioner recommended that all of Staden's claims be dismissed.[8] On August 12, 2013, Staden's retained counsel filed a Motion to Traverse Commissioner's Recommendation.[9] The Motion requested that the PCR application be amended to include supporting affidavits that material defense witnesses were dismissed from trial without Staden's knowledge or permission, and to add an additional claim that the prosecution withheld evidence favorable to Staden, in violation of *Brady v. Maryland*.[10] The trial court issued an order on November 20, 2013, dismissing Staden's PCR application.[11] Staden sought review with the First Circuit, which was originally denied "on showing made" for failure to include required supporting documentation.[12] After Staden refiled his writ application, the First Circuit issued an order on July 14, 2014 denying review.[13] The Louisiana Supreme Court also denied review on July 31, 2015.[14]

Staden filed a counseled habeas petition with this Court on May 6, 2016,[15] asserting the following grounds for relief: (1) fundamental miscarriage of justice,[16] (2) *Brady*

---

[5] *State v. Staden*, No. 2011-1455 (La.App. 1 Cir. 5/3/12), 2012 WL 1564592.
[6] R. Doc. 35-9, p. 147.
[7] R. Doc. 35-6, pp. 18-28.  Staden's signature on the PCR application is dated April 25, 2013, but the accompanying Affidavit of Verification is dated April 30, 2013. R. Doc. 35-6, pp. 23-24.
[8] R. Doc. 35-10, pp. 77-82.
[9] R. Doc. 35-10, pp. 4-6.
[10] 373 U.S. 83 (1963).
[11] R. Doc. 35-10, pp. 43-45.
[12] R. Doc. 35-9, p. 142. The First Circuit's Order permitted the refiling of a new writ application on or before June 3, 2014.
[13] R. Doc. 35-7, p. 154.
[14] R. Doc. 35-7, p. 115.
[15] R. Doc. 1.
[16] The fundamental miscarriage of justice claim relates to Staden's attempt to obtain merits review of procedurally defaulted claims.

violations/prosecutorial misconduct, (3) violation of his Sixth Amendment right to self-representation, and (4) cumulative error. The Court dismissed Staden's petition as untimely on July 10, 2019.[17] Staden appealed the Court's decision to the United States Fifth Circuit Court of Appeals.[18] Upon clarification from the appeals court about the impact of the First Circuit dismissal "on showing made" of Staden's original writ application seeking review of dismissal of his PCR application, the habeas application was deemed timely, and the case was remanded to this Court for further proceedings.[19]

## II.    FACTUAL BACKGROUND

The facts, as summarized by the First Circuit, are as follows:

> On December 1, 2009, at approximately 8:45 a.m., [Staden] entered Alby's Market & Deli (Alby's) on North Sherwood Forest Boulevard in Baton Rouge, approached the check-cashing station, and began questioning a store employee, Sam Tran (one of the victims), about a power of attorney form and his need to cash someone else's check. Within seconds of [Staden's] entry and as he continued to question Tran, [Staden's] brother, Jeffrey Staden, entered the store and pointed a gun to Tran's face while a third perpetrator held another store employee, Thanh Nguyen (another victim), at gunpoint.[20]
>
> Jeffrey Staden tossed a bag to [Staden], and [Staden] retrieved and placed pre-made zip ties around Tran's and Nguyen's wrists and placed a white plastic bag over Tran's head. Jeffrey Staden jumped over the counter and hit Tran in the head with the gun when Tran failed to comply with his command to get on the floor. Tran, who was dizzy and bleeding, fell to the floor as a result of the blow to the head. The perpetrators took cash from the store's cash registers, but also wanted money from the safe. After Tran informed Jeffrey Staden that he could not open the safe due to its time-lock system, he shot Tran in the right leg. As Jeffrey Staden and another perpetrator exited the store, [Staden] dragged Nguyen toward Tran. Nguyen loosened the straps on his wrists and grabbed a gun that was located behind the store counter to pursue the perpetrators. [Staden] untied Tran, apologized to him, shouted warnings to the other perpetrators that Nguyen had a gun, and then fled from the store.[21]

---

[17] R. Docs. 16 & 17.
[18] R. Doc. 22.
[19] R. Doc. 30.
[20] At least one other perpetrator was present in the store and actively participated in the robbery along with [Staden] and his brother, Jeffrey Staden. The bill of information lists [Staden], his brother, and a third perpetrator, Jermain Franklin, [Staden's] cousin. [Staden's] motion to sever was granted, and this appeal relates only to [Staden's] trial.
[21] *State v. Staden*, 2012 WL 1564592, at *1.

### III.     PROCEDURAL DEFAULT

Respondent contends that Staden's *Brady* claim is procedurally defaulted through the independent and adequate state ground doctrine, and that parts of Staden's self-representation claim are procedurally defaulted because he failed to exhaust state court remedies.[22] Respondent also argues that Staden's entire cumulative error claim is unexhausted and procedurally defaulted.[23]  Staden acknowledges that some of his claims may be unexhausted, but argues that the Court should consider his entire habeas petition under the "fundamental miscarriage of justice" exception.

A federal court generally cannot review the merits of a state prisoner's habeas petition if the claims in the petition are procedurally defaulted.[24] Procedural default can occur in two ways. First, if the prisoner has never fairly presented that claim to the highest available state court, the claim is unexhausted. Second, if the prisoner has presented the claim to the highest available state court but that court has dismissed the claim on a state law procedural ground instead of deciding the case on the merits, and that rule is an independent and adequate ground for dismissal.[25]

The exhaustion requirement is satisfied only when a petitioner's claims have been properly presented to the state's highest court, either on direct review or on post-conviction attack.[26] To satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the

---

[22] R. Doc. 40, p. 6-7. Respondent also contends that Staden's *Brady* claim is procedurally defaulted because he did not raise it on appeal. Staden's *pro se* brief to the First Circuit argued that the trial court erred in failing to grant his application for post-conviction relief.  R. Doc. 36-1, pp. 1-15. The *Brady* claim was raised by Staden's counsel in the Motion to Traverse Commissioner's Recommendation (R. Doc. 35-10, pp. 4-6) and was addressed on the merits by the trial court. R. Doc. 35-10, pp. 44-45. Accordingly, Staden's *Brady* claim was fairly presented to the First Circuit.
[23] R. Doc. 40, p. 14.
[24] *Rocha v. Thaler*, 626 F.3d 815 (5th Cir. 2010).
[25] *Id.,* at 820.
[26] *Bufalino v. Reno,* 613 F.2d 568, 570 (5th Cir. 1980).

rules of the state courts."[27] Each claim must be presented to the state's highest court, even when review by that court is discretionary.[28]

For the independent and adequate state law ground to result in procedural default, the state procedural rule must be both independent of the merits of the federal claim and an adequate basis for the court's decision. A state procedural rule is an adequate basis for the court's decision only if it is strictly or regularly applied evenhandedly to most similar claims.[29]

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.* the conviction of one who is actually innocent.[30] "[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."[31]

### A. Staden's Prosecutorial Misconduct/*Brady* and Certain Right to Self-Representation Arguments Are Not Procedurally Defaulted; Staden's Cumulative Error Claim and Certain Self-Representation Arguments Are Procedurally Defaulted

#### 1. Prosecutorial Misconduct/*Brady v. Maryland*

Staden's *Brady* claim was not included in his *pro se* PCR application. After the Commissioner issued her recommendation to dismiss Staden's PCR application, Staden's counsel filed a Motion to Traverse the Commissioner's Recommendation.[32] This motion asked the trial

---

[27] *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988).

[28] *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987).

[29] *Rocha,* 626 F.3d at 821, citing A*mos v. Scott*, 61 F.3d 333, 339 (5th Cir.) (emphasis omitted), cert. denied, 516 U.S. 1005 (1995).

[30] *Id.,* at 822.

[31] *See Murray v. Carrier*, 477 U.S. 478, 496 (1986).

[32] R. Doc. 35-10, pp. 4-6.

court to amend Staden's PCR application and to consider his *Brady* claim. The trial court issued

an Order on November 11, 2013, dismissing all Staden's PCR claims.[33] With regard to Staden's

*Brady* claim, the trial court concluded that the claim was "procedural[ly] bar[red]" pursuant to

La.C.Cr.P. art. 926,[34] but also found that the claim lacked merit. Respondents contend this claim

is procedurally defaulted through the independent and adequate state ground doctrine.[35]

   The trial court dismissed Staden's *Brady* claim "at this time, as it was not properly raised

in a Uniform Application for Post-Conviction Relief required by La.C.Cr.P art. 926."[36] The

remedy for a violation of Article 926(D)[37] is to permit the applicant to file his petition on the

approved form or a dismissal without prejudice.[38] While the trial court described this as a

"procedural bar," the trial court also acknowledged by using the phrase "at this time" that a

dismissal under the circumstances did not prohibit Staden from reasserting the claim. In other

words, the *Brady* claim is not defaulted because the state court's application of Article 926(D) did

not foreclose state court consideration of the federal claim.[39]

   Furthermore, an independent review by this Court did not reveal similar application of the

rule by Louisiana courts in this context as a customary practice to support a conclusion that the

---

[33] R. Doc. 35-10, pp. 43-45.

[34] *Id.,* at p. 44.

[35] R. Doc. 40, p. 6.

[36] R. Doc. 35-10, p. 44.

[37] The Order did not reference Section "D" of Article 926; however, Section "D" of Article 926 requires that the application be filed on an approved form, which was the stated basis of the dismissal.

[38] *See Jacobs v. Cain*, 2008-0301 (La. 2/13/09), 999 So.2d 1138 (Mem.) (district court erred in dismissing relator's counseled application with prejudice based on counsel's failure to use the uniform application for post-conviction relief resulting in remand for consideration on the merits or refiling of petition); *State v. Patin*, 19-157 (La.App. 5 Cir. 11/13/19), 285 So.3d 48, 52 (failure to use form approved by Louisiana Supreme Court resulted in dismissal without prejudice).

[39] Brian R. Means, *Federal Habeas Manual: A Guide to Federal Habeas Corpus Litigation*, § 9B:1 (May 2020 Update). The fact that the trial court then also addressed the merits of Staden's *Brady* claim also calls into question whether the state procedural bar was "independent," *i.e.*, that the decision rested on the procedural bar.

rule is firmly established and regularly followed.[40] To the contrary, it is well established that upon request a Louisiana state district judge exercises discretion to allow a post-conviction petitioner to amend his petition.[41] Likely because Article 926(D) does not generally foreclose the state court from considering the federal claim, there does not appear to be any instance in the reported case law where Article 926(D) has been found to be an independent and adequate state bar.[42] Accordingly, the merits of Staden's *Brady* claim will be addressed.

### 2. Right to Self-Representation

Staden asserts four arguments regarding the constitutional violations related to Sixth Amendment right to self-representation: a) "The Trial court's appointment of standby counsel was defective due to the nature of the position of 'standby' or advisory counsel;"[43] b) "Standby counsel's unpreparedness rendered him ineffective;"[44] c) "Standby counsel's dismissal of defense witnesses, without the defendant's knowledge or consent, contributed to his ineffective assistance of counsel and further denied the defendant the right to present his own defense;"[45] and d) "Standby counsel's participation in and involvement with Staden's case violated his Sixth Amendment rights as articulated in *Faretta* and *McKaskle*."[46] Respondent contends that portions of Staden's claim regarding his right to self-representation are unexhausted. Particularly, Respondent argues that Staden's claims that standby counsel was unprepared and interfered with the presentation of the

---

[40] *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997), citing *Lott v. Hargett*, 80 F.3d 161, 165 (5th Cir. 1996) (to qualify as an independent and adequate state ground the rule must be strictly and regularly applied). *See also Walker v. Martin*, 562 U.S. 307, 316 (2011).

[41] *State v. Guillory*, 2018-0144 (La.App. 1 Cir. 4/9/18), 2018 WL 1733374, citing *State ex rel. Benn v. State***,** 2011–2418 (La. 6/22/12), 90 So. 3d 1045, 1046 (*per curiam*); *State ex rel. Foy v. Whitley***,** 92–1281 (La. 10/6/95), 661 So.2d 455.

[42] *Compare* La. Code Crim. P. art. 926(B)(3), which provides for dismissal for failure to state with reasonable particularity the factual basis of a claim and which has been found to be an independent and adequate state ground. *See Landry v. Cain*, No. 15-5, 2018 WL 1442900, at *7 (M.D. La. Feb. 28, 2018), citing *Brumfield v. Cain*, No. 04-787, 2008 WL 2600140, *3-4 (M.D. La. June 30, 2008).

[43] R. Doc. 1, p. 41.

[44] *Id.*, p. 43.

[45] *Id.*, p. 46.

[46] Id., p. 48.

defense at trial were not presented to the state courts.[47]    The argument that standby counsel interfered was adequately presented in Staden's *pro se* brief to the First Circuit on direct appeal.[48] In contrast, the arguments about the alleged lack of preparation of standby counsel and that appointment of standby counsel is inherently defective are unexhausted as these arguments were not fairly presented to the state court on either direct appeal or in PCR proceedings.[49] Accordingly, Staden's claims regarding his right to self-representation as relates to interference (arguments c & d, above) will be considered on the merits.    The other arguments regarding standby counsel are unexhausted and cannot be reviewed by this Court unless Staden establishes either cause for the default and resulting prejudice or actual innocence. As explained below, because Staden does neither, his other arguments (a & b, above) regarding standby counsel are not addressed on the merits.

### 3. Cumulative Error

Respondent also contends that Staden failed to exhaust his cumulative error claim.[50] The record demonstrates that Staden failed to present this claim to the state courts, either on direct appeal or in his PCR application. Accordingly, this claim is unexhausted and cannot be reviewed by this Court unless Staden establishes either cause for the default and resulting prejudice or actual innocence. Because Staden does neither, his cumulative error claim is also not addressed on the merits.

---

[47] R. Doc. 40, p. 7.

[48] R. Doc. 35-7, p. 92-95.  Staden provides extensive argument about standby counsel taunting one of the victims, Thanh Nguyen, during questioning which interference Staden claims lost him the opportunity to get Nguyen to admit to prior conversations, that was critical to his defense strategy.

[49] To the contrary, Staden's pro se brief to the First Circuit on direct appeal suggests that standby counsel was helpful. Staden says "[standby counsel] stunned me with his help.  He was very caring and attentive.  He even remembered things I had forgotten."  R. Doc. 35-7, p. 93.  While Staden does say in his PCR application that standby counsel was "unprepared to do anything but stand on side of me, with the duty to turn in my new list of witnesses," this comment was made in connection with his claim that the trial judge erred in facilitating interference by standby counsel (R. Doc. 35-6, p. 28), a claim not raised in the habeas petition.

[50] R. Doc. 40, p. 14.

### B. Staden Has Failed to Establish a Basis for this Court to Consider His Procedurally Defaulted Arguments on the Merits

If Staden were to attempt to present his unexhausted claims to the state courts now, they would be rejected as a successive application pursuant to La. Code Crim. Proc. Ann. art. 930.4(E), or as untimely under Article 930.8(A).[51] Staden would also be prohibited from now seeking review of his unexhausted claims in either the First Circuit or the Louisiana Supreme Court.[52] Therefore, Staden's claim of cumulative error, and his arguments that standby counsel is inherently defective and that standby counsel unpreparedness rendered him ineffective are procedurally defaulted. Because he has not shown cause and prejudice for the default or established actual innocence, this Court is barred from conducting a merits review of these claims.[53]

Staden argues that this Court should consider any procedurally defaulted claims under the "fundamental miscarriage of justice" exception.[54] He says that he has consistently claimed his innocence as a "bystander to a drug deal gone bad."[55] A credible claim of innocence applies only to a "narrow class of cases" and must be supported by "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."[56] Actual innocence is shown only when the court scrutinizes the likely impact on reasonable factfinders of "the overall, newly supplemented record,"[57] to conclude

---

[51] "No application for post-conviction relief ... shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final...."

[52] *See* Uniform Rules, Courts of Appeal, Rule 4–3 ("An application not filed in the appellate court within the time so fixed or extended [by the District Court] shall not be considered, in the absence of a showing that the delay in filing was not due to the applicant's fault."); Supreme Court Rule X, § 5(a) ("An application seeking to review a judgment of the court of appeal ... after a denial of an application, shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal").

[53] *See Bledsue v. Johnson,* 188 F.3d 250, 254 (5th Cir. 1999) ("Procedural default exists where ... the petitioner fails to exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred."); *Sones v. Hargett,* 61 F.3d 410, 416 (5th Cir. 1995).

[54] R. Doc. 45, p. 4.

[55] R. Doc. 45, p. 5.

[56] *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

[57] *House v. Bell*, 547 U.S. 518, 538 (2006).

9

that, in the light of all evidence—both the evidence presented at trial and that newly discovered—"no juror, acting reasonably, would have voted to find [petitioner] guilty beyond a reasonable doubt."[58]

The statements attached to Staden's habeas petition do not qualify as "new evidence." Evidence does not qualify as "new" under the *Schlup* actual-innocence standard if "it was always within the reach of [petitioner's] personal knowledge or reasonable investigation."[59] Only two statements offer any information regarding the crime, those of Akedra Brown and Bianca Frank. From their substance, the information contained in these statements was either known to, or within the reach of, Staden with reasonable investigation before trial.[60]

Accordingly, the Court will not consider the merits of Staden's procedurally defaulted claim of cumulative error, or his arguments that standby counsel is inherently defective and/or that standby counsel unpreparedness rendered him ineffective.

## IV. MERITS REVIEW

### A. Standard of Review

Federal review of collateral attacks on state criminal convictions is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). AEDPA states, in relevant part, that a federal court cannot grant a state prisoner's habeas petition "with respect to any claim that was

---

[58] *McQuiggin v. Perkins,* 569 U.S. 383, 386 (2013), quoting *Schlup*, 513 U.S. at 329.

[59] *Hancock v. Davis*, 906 F.3d 387, 390 (5th Cir. 2018), citing *Moore v. Quarterman*, 534 F.3d 454, 465 (5th Cir. 2008).

[60] Akedra Brown's statement indicates that she contacted Staden through his "freedom" Facebook page and received a return message. Brown also states that she spoke to Staden's private investigator, was advised of the trial date, and showed up at the courthouse on the day of trial. R. Doc. 1-3. Bianca Frank's statement indicates that she also spoke to Staden's investigator prior to trial and showed up at the courthouse during the trial. R. Doc. 1-5. These statements also fail to establish that no reasonable factfinder would have found Staden guilty of armed robbery if the information was available at trial. If credible, Frank's statement merely casts doubt on whether Staden left in the same vehicle as the other robbers or whether the robbers also took drugs from Thahn Nguyen during the robbery. If credible, Brown's statement demonstrates that she heard some of the robbers discussing the robbery in advance. Neither of these statements offer any proof that Staden is *factually innocent* of armed robbery. "[I]n this regard ... 'actual innocence' means factual innocence, not mere legal insufficiency." *See Bousley v. United States,* 523 U.S. 614, 623-24 (1998).

adjudicated on the merits in State court proceedings" unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[61] This provision establishes a "highly deferential standard for evaluating state-court rulings" that requires federal courts to give those rulings "the benefit of the doubt."[62] This Court cannot conduct its "own independent inquiry into whether the state court was correct as a *de novo* matter.... Relief is available under [AEDPA] only if the state court's decision is objectively unreasonable."[63] The question is whether "fairminded jurists could disagree" as to how the Supreme Court's case law applies to the circumstances that the state court confronted; if so, then this Court cannot set aside the state court's conclusion.[64] This deference applies even when the state court has denied habeas relief without a written opinion. In such cases, the habeas petitioner must "show[] there was no reasonable basis for the state court to deny relief."[65] Conversely, when claims are not adjudicated on the merits in state court, the deference required by AEDPA does not apply and the federal court review is *de novo*.[66]

Whether or not the state court decision was an adjudication on the merits is determined on a case-by-case basis,[67] based on the following factors: "(1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state courts' opinions suggest reliance upon procedural grounds rather than a determination on the merits."[68]

---

[61] 28 U.S.C. § 2254(d)(1).
[62] *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam), quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997).
[63] *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004).
[64] *Id.*, at 664.
[65] *Harrington v. Richter*, 562 U.S. 86, 98 (2011).
[66] *Henderson v. Cockrell*, 333 F.3d 592, 598 (5th Cir. 2003).
[67] *Id.*, citing *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999).
[68] *Id.*

This Court must determine the appropriate standard of review for Staden's claims that will be decided on the merits: *Brady* violations, prosecutorial misconduct, and violation of his Sixth Amendment right to self-representation as it relates to standby counsel's alleged interference, including dismissal of witnesses. Each claim was adjudicated on the merits by the trial court in denying Staden's PCR application.[69] Accordingly, the deferential standard of review applies to all claims to be evaluated on the merits.

### B. *Brady*/Prosecutorial Misconduct

#### 1. State's Failure to Disclose Federal Undercover Investigation of Witness, Thahn Nguyen

Staden contends the prosecution violated its duty under *Brady* to disclose that witness/victim Nguyen was under investigation by the Drug Enforcement Administration ("DEA") for conspiracy to distribute a controlled dangerous substance and for possession, manufacture, and distribution.[70] Staden says that he testified at trial that the robbery was a "drug buy gone wrong" and the undisclosed information had a direct bearing on Nguyen's credibility.[71] Staden claims that he was prejudiced because Nguyen's testimony was cited in the trial court's reasons for finding him guilty.[72]

The trial court dismissed Staden's claim on the merits, finding:

> The traversal indicated the prosecutor failed to disclose that one of the trial witnesses, Thanh Nguyen, was the target of a criminal investigation at the time of the petitioner's trial. The petitioner apparently became aware of this information because it was contained in a newspaper article published on June 6, 2012 in The Advocate. A *Brady* violation is defined as any breach of the broad obligation to disclose exculpatory evidence. A true *Brady* claim has three components: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory

---

[69] Although the *Brady* claim was dismissed by the trial court on procedural grounds, the trial court also evaluated the merits of the *Brady* claim and concluded that "in addition to the aforementioned procedural dismissal, this claim is also dismissed on the merits." R. Doc. 35-10, p. 45.

[70] R. Doc. 1, p. 29.

[71] *Id.,* at 30.

[72] *Id.,* at 34.

or because it is impeaching; (2) that the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. *State v. Carter*, 43,304 (La. App. 2 Cir. 6/18/08), 987 So.2d 364, 373 *citing State v. Garrick*, 03-0137 (La. 4/14/04), 870 So.2d 990. This Court is not convinced that the information shown in the newspaper article in question was suppressed by the State, either willfully or inadvertently. The trial of *State v. Dallas Staden* at which Thanh Nguyen testified took place in November of 2010. Thanh Nguyen was not arrested for Conspiracy to Distribute MDMA until June 5, 2012. Further, the article indicates that the investigation and arrest of Nguyen were conducted by federal law enforcement. It is not reasonable to conclude that the State was aware, or should have been aware, of the federal investigation of Thanh Nguyen in November of 2010.

Further, the Court is not convinced that prejudice ensued as the result of the Court not being aware of the pending criminal investigation of Thanh Nguyen. As the State stated in their brief, the only novel point which was not corroborated by other sourced to which Nguyen testified was that petitioner had left the crime scene in the same car as the other perpetrators. Nguyen was thoroughly cross-examined on this point by the petitioner. The remainder of Nguyen's testimony was consistent and corroborated by other evidence.

For these reasons the petitioner has failed to convince the Court that a *Brady* violation took place as the allegations fail to meet the requirements of the second and third components of a *Brady* violation. Thus, in addition to the aforementioned procedural dismissal, this claim is also dismissed on the merits.[73]

"[T]he suppression by the prosecution of evidence favorable to an accused ... violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[74] To prevail on a *Brady* claim, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."[75] Evidence is material where there exists a "reasonable probability" that had

---

[73] R. Doc. 35-10, pp. 44-45.
[74] *Banks v. Dretke,* 540 U.S. 668, 691 (2004), quoting *Brady,* 373 U.S. at 87.
[75] *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999).

it been disclosed the result at trial would have been different.[76] "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."[77]

In *Kyles v. Whitley,*[78] the Supreme Court extended the *Brady* ideal and held that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police. But whether the prosecutor succeeds or fails in meeting this obligation (*i.e.*, whether failure to disclose is in good faith or bad faith),[79] the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable."[80] A claim under *Brady* is a mixed question of law and fact.[81] Under the applicable standard of review, this Court therefore must determine if the state court's legal decision denying relief was contrary to or involved an unreasonable application of Supreme Court precedent, and whether the state court made an unreasonable determination of the facts considering the evidence presented.[82]

As noted by the trial court, under *Brady's* second factor, there is nothing in the record to establish that the state suppressed from the defense evidence of the DEA investigation. Nguyen's arrest took place a year and a half *after* Staden's trial. Nothing in the record demonstrates that the prosecutor knew or could have discovered from matters within the prosecution's control, that Nguyen was the target of a federal investigation at the time of Staden's trial. The *Brady* disclosure requirement does not extend further. Supreme Court precedent does not mandate that a state

---

[76] *Banks,* 540 U.S. at 699.
[77] *United States v. Bagley,* 473 U.S. 667, 682 (1985).
[78] 514 U.S. 419 (1995).
[79] *See Brady,* 373 U.S., at 87.
[80] *Kyles,* 514 U.S. at 438.
[81] *Higgins v. Cain,* 434 Fed.Appx. 405, 406 (5th Cir. 2011), citing *Banks v. Thaler,* 583 F.3d 295, 309 (5th Cir. 2009).
[82] *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000).

prosecutor inquire into every possibility that a witnesses might be under federal investigation in matters unrelated to the state's case.[83]

As for *Brady's* third factor, the trial court found no prejudice because Staden's conviction was not based solely on Nguyen's testimony. The trial court found that the only novel testimony provided by Nguyen was the fact that Staden left the scene in the same vehicle as the perpetrators.[84] On direct appeal, the First Circuit found that Staden's conviction was sufficiently supported by testimony from Sam Tran, Detective Higginbotham, and Staden, as well as Staden's recorded police interview.[85] The First Circuit determined that the inference of a guilty mind could be found from the fact that Staden fled the scene instead of waiting for the police to arrive and from Staden's inconsistent statements and lies about his conduct during the robbery.[86] Staden does not dispute that he fled the scene before the police arrived; only whether he fled the scene in the red car.[87]

Because Staden has not shown that the state courts' denial of his *Brady* claim based on the failure of the prosecution to disclose the DEA investigation of Nguyen was contrary to, or an unreasonable application, of federal law, nor that the courts unreasonably determined the facts considering the evidence, this claim is subject to dismissal.[88]

---

[83] *See Frith v. Rader,* No. 14-0702, 2015 WL 1539494, at *7–8 (E.D. La. Apr. 6, 2015), citing *Goff v. Bagley,* 601 F.3d 445, 476 (6th Cir. 2010); *Woolfolk v. Bowersox,* No. 09-367, 2012 WL 943095, at *6–7 (E.D.Mo. Feb. 15, 2012), *adopted,* No. 09, 367, 2012 WL 942955, at *1 (E.D.Mo. Mar. 20, 2012).

[84] R. Doc. 35-10, pp. 44-45.

[85] *State v. Staden*, 2011-1455 (La. App. 1 Cir. 5/3/12), 2012 WL 1564592 at *6-7. Tran testified that Staden "distracted" him upon entering the store; warned the other perpetrators when Nguyen retrieved a gun and put the zip ties around Tran's wrists. *Id.,* at *6. Detective Higginbotham testified that black zip ties matching those used in the robbery were found at Staden's residence. *Id.* During his recorded interview, Staden admitted that he knew that his brother planned to rob the store because he discussed it on several occasions and claimed that it was a coincidence that he was in the store at the same time the robbery occurred. *Id.* Staden testified that he was at Alby's to pretend to cash a check to appease his brother who wanted to borrow money; he placed the zip ties loosely around Tran's wrists hoping that he would break loose and shoot one of the robbers; he fled because he did not think the police would believe that he was not involved. *Id.,* at *7.

[86] *Id.,* at *8.

[87] R. Doc. 35-5, p. 68-69.

[88] Because the conviction did not rest solely on the testimony of Nguyen, Staden's arguments about the prosecution's failure to correct Nguyen's allegedly false testimony also fail on the prejudice factor. R. Doc. 1, pp. 30-34. It is not immediately apparent whether Staden is solely taking the position that the failure to correct Nguyen's testimony was connected to the *Brady* violation or whether he is asserting a separate claim of prosecutorial misconduct. To the extent

## 2. Interference with Defense Witnesses

Next, Staden claims that the prosecutor refused the entry of witness, Akedra Brown ("Brown"), at trial, "denying the defendant the opportunity to present mitigating and potentially exculpatory evidence on his behalf."[89] Brown wrote a letter, dated August 8, 2013, which was submitted to the trial court during Staden's PCR application proceedings. Brown states that, on the morning of December 1, 2009, she overheard a group of men planning the robbery and that Staden was not present.[90] Brown's letter also contains her account of her interactions with the prosecutor.[91] Brown contends that she contacted the prosecutor by telephone and relayed her story but never heard back from him, despite trying to get in touch with the prosecutor several times. She also claims that she appeared at trial, but the prosecutor told her that it was "against the law" for her to enter the courtroom and that she "could leave or wait until the trial was over."[92] Brown recounts that she left the courthouse, later found out Staden was convicted of the robbery, and that she feels badly because she "knows he didn't do that [because] he was not even one of the people [she] saw planning the robbery."[93]

The trial court considered Brown's statement when it dismissed Staden's claim that the prosecutor interfered with his witnesses.[94] The trial court made the following finding of facts in determining that this claim was without merit:

> At no time did [Staden] request or enquire with the Court about any subpoenas which had not been issued including subpoenas for Akedra Brown…Ms. Brown's statement…indicate[s] that [she] was present at court and provided contact information to the defendant's family. Thus, defendant was free to call [Brown] as

---

that Staden intended a separate claim, the claim would be unexhausted because it was not presented to the state courts either on direct appeal or in post-conviction proceedings. This Court could not consider the claim as Staden has failed to show cause and prejudice or actual innocence.

[89] R. Doc. 1, p. 34.
[90] R. Doc. 1-3, p. 3.
[91] R. Doc. 1-3.
[92] *Id.,* at p. 3.
[93] *Id.*
[94] R. Doc. 35-10, pp. 43-45.

a witness or request a subpoena for [Brown] and the record reflects he failed to do so.[95]

A claim of prosecutorial misconduct is actionable on federal habeas review only when the alleged misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process.[96] Due process is only violated when the alleged conduct deprived the petitioner of his right to a fair trial. A trial is fundamentally unfair if there is a reasonable probability the verdict might have been different had the trial been properly conducted.[97] Generally, habeas corpus relief is available for prosecutorial misconduct only when the prosecutor's conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair.[98] The conduct must either be so persistent and pronounced, or the evidence so insubstantial that, but for the conduct, no conviction would have occurred.[99]

The trial court concluded as a factual matter that Staden had opportunities to ensure Brown's testimony at trial but failed to do so. Staden has not overcome the deference afforded this factual finding. Additionally, assuming Brown's account is credible, Staden cannot show that he would have avoided conviction if Brown had testified. There is no reason to believe that Brown's testimony would have changed the outcome, especially since the First Circuit found sufficient evidence to support Staden's conviction based on his behavior during and after the robbery.[100] The trial court's dismissal of this claim was neither contrary to, nor an unreasonable application of, federal law and this claim should be dismissed.

---

[95] *Id.*
[96] *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).
[97] *Styron v. Johnson,* 262 F.3d 438, 454 (5th Cir. 2001).
[98] *Darden*, 477 U.S. at 181.
[99] *Kirkpatrick v. Blackburn,* 777 F.2d 272, 281 (5th Cir. 1985).
[100] Staden's other argument about inferring prosecutorial misconduct from interference with witnesses is taken out of context. Staden argues that the prosecutor's bad faith can be inferred because, in addressing a motion in limine filed by Staden, the trial court inquired about any witnesses Staden might call and the prosecutor said he had scheduled the witnesses to appear. R. Doc. 1, pp. 36-37. Staden leaves out of this argument that the witnesses at issue were "the Trans, the Nguyens," (R. Doc. 35-3, p. 138), who were also key prosecution witnesses scheduled to testify at the trial.

### C.  Right to Self-Representation

In his next claim, Staden contends that his Sixth Amendment right to self-representation was denied by standby counsel interfering with Staden's right to present his own defense by dismissing Staden's witnesses,[101] and by cross-examining state witnesses.[102] The First Circuit denied Staden's self-representation claim on direct appeal.[103]

The United States Supreme Court opinion in *McKaskle v. Wiggins*[104] specifically endorsed the participation of standby counsel,[105] identifying certain limitations to protect the Sixth Amendment right to self-representation recognized in *Faretta v. California*.[106] With respect to a bench trial, the Supreme Court said:

> ...*Faretta* rights are adequately vindicated in proceedings outside the presence of the jury if the *pro se* defendant is allowed to address the court freely on his own behalf and if disagreements between counsel and the *pro se* defendant are resolved in the defendant's favor whenever the matter is one that would normally be left to the discretion of counsel.[107]

The question of whether Staden's Sixth Amendment right to self-representation was infringed is to be judged by this standard.

*McKaskle* requires that standby counsel's participation be "over the defendant's objection" to erode the defendant's *Faretta* rights.[108] The record does not reflect that Staden lodged any objection to the participation by his standby counsel when appointed or at any point during his

---

[101] R. Doc. 1, pp. 46-48.
[102] *Id.*, pp. 49-51.
[103] *State v. Staden*, 2011-1455 (La.App. 1 Cir. 5/3/12), 2012 WL 1564592 at *3-4.
[104] 465 U.S. 168 (1984).
[105] *Id.,* at 176-177. ("[N]o absolute bar on standby counsel's unsolicited participation is appropriate or was intended [by *Faretta*]. The right to appear *pro se* exists to affirm the dignity and autonomy of the accused and to allow the presentation of what may, at least occasionally, be the accused's best possible defense. Both of these objectives can be achieved without categorically silencing standby counsel.").
[106] 422 U.S. 806 (1975).
[107] *McKaskle*, 465 U.S. at 177-178.
[108] *Lefevre v. Cain*, 586 F.3d 349, 355–56 (5th Cir. 2009), citing *McKaskle,* 465 U.S. at 182.

trial. Staden did not object at the beginning of trial when the judge explained the nature of Moore's role as standby counsel.[109] Staden voluntarily conferred with Moore before cross-examining witnesses[110] and accepted Moore's assistance in making evidentiary objections.[111]

The trial record reflects that Staden gave the opening statement,[112] cross-examined the prosecution's witnesses,[113] stipulated to the expertise of a witness,[114] conducted the direct exam of defense witnesses,[115] and gave the closing argument.[116] The record also reflects that Staden made his own decisions on withdrawing his motion to suppress,[117] whether to object to evidence,[118] whether to take a witness out of order,[119] whether to release witnesses from their subpoena obligations,[120] which defense witnesses to call,[121] and whether he should testify in the defense case.[122]

The trial record reflects that Moore interjected a question during Detective Adam Cheney's direct exam regarding the caliber of a shell casing[123]and Moore advocated for the reading of Thanh Nguyen's testimony when it appeared inconsistent.[124] The record also reflects that during Staden's cross examination of Nguyen, Moore asked Nguyen a few questions about his testimony that Staden left with the perpetrators in the same car with the robbers.[125]

---

[109] R. Doc. 35-3, p. 156-157.
[110] R. Doc. 35-3, p. 175; R. Doc. 35-4, p. 9, 19, 30, 83, 130; R. Doc. 35-5, p. 15 … The record also includes numerous notations of "Off the Record Discussion," which appear to be conferences between Staden and Moore.
[111] R. Doc. 35-4, p. 25, 29-30.
[112] R. Doc. 35-3, pp. 166-167.
[113] R. Doc. 35-3, pp.176-178; R. Doc. 35-4, pp. 10-16, 31, 34, 41-57; 85-107; 131-155; 161; 180-197; R. Doc. 35-5, pp. 17-22; 25.
[114] R. Doc. 35-4, pp. 24-25.
[115] R. Doc. 35-5, pp. 27-28; 31-39, 51-53.
[116] R. Doc. 35-5, pp. 113-126.
[117] R. Doc. 35-3, p. 160.
[118] R. Doc. 35-3, pp. 181, 183; R. Doc. 35-4, pp. 5, 6, 8, 18, 39, 76, 113, 115, 167, 170,171, 172; R. Doc. 35-5, p. 13.
[119] R. Doc. 35-4, p. 21.
[120] R. Doc. 35-3, p. 179; R. Doc. 35-4, p. 16, 20; R. Doc. 35-5, p. 29.
[121] R. Doc. 35-5, p. 26, 30.
[122] R. Doc. 35-5, p. 54.
[123] R. Doc. 35-4, p. 7.
[124] R. Doc. 35-4, pp. 135-137.
[125] R. Doc. 35-4, p. 138; 140-142.

Staden argues that Moore's participation aggravated Nguyen and undermined Staden's right to self-representation.[126] As noted above, the record shows that Staden maintained full control over his defense throughout the trial. Staden never objected to Moore's participation and the record does not reflect a single dispute between Staden and Moore.

Staden also argues that Moore dismissed defense witnesses, which interfered with his right to self-representation.[127] As discussed above, the trial court made a factual determination that Staden made the decision to release his witnesses and was free to ask the court to subpoena any witnesses he needed to appear at trial.[128] Staden has not refuted this factual determination with clear and convincing evidence.[129] Indeed, the record reflects that Staden made the decision during the trial to release his witnesses.

Staden was allowed to freely address the trial court on his own behalf and to direct the content and organization of his defense. The record does not reflect a violation of Staden's *Faretta* rights and the state court's decision dismissing this claim is neither contrary to, nor an unreasonable application of, federal law.

---

[126] R. Doc. 1, p. 50.

[127] Staden argues that Moore dismissed Bianca Frank, Jayda Staden, and AkedraBrown. Their statements are attached to Staden's petition as R. Doc. 1-3, R. Doc. 1-4 and R. Doc. 1-5. The statements demonstrate that Staden was aware that each of these individuals had testimony to offer before he made the decision to release his witnesses. Brown's statement indicates that she spoke to Staden's investigator, who knew she intended to attend trial. The statement also indicates that the investigator had a discussion with Staden about Brown's willingness to testify at trial. R. Doc. 1-3, p. 3. The trial record reflects that Staden was on notice that Jayda Staden was present at trial. In fact, the trial judge detained Jayda Staden for a portion of the trial for an inappropriate outburst (R. Doc. 35-4, p. 144-145), but released her so that Staden could call her as a witness (R. Doc. 34-4, pp. 162, 172-173). Frank's statement also indicates that she spoke to Staden's investigator and provided Staden's family with her contact information. R. Doc. 1-5.

[128] R. Doc. 35-10, p. 43-44. The trial court referenced that it issued the subpoenas requested by Staden, citing a Request for Issuance of Subpoena, dated October 6, 2010. R. Doc. 35-1, pp. 156-157. Of the witnesses Staden complains that standby counsel interfered with by dismissing, only Talicia Cavalier is listed as a witness to be subpoenaed in his Request for Issuance of Subpoena. In response to questioning by the Court during trial, Staden stated that he had released all witnesses, except for one witness and himself. R. Doc. 35-5, p. 29 (The Court: Do you want a few minutes to discuss – to talk with [standby counsel] before you call your next witness? Mr. Staden: Well, I released everybody. I'm – I'm about to get up there. I've released except one other person. Mr. Moore [standby counsel]: He's going to call himself, I think."). Staden then called Talicia Cavalier to testify. R. Doc. 35-5, pp. 30-31.

[129] 28 U.S.C. 2254(e)(1).

## V.    CERTIFICATE OF APPEALABILITY

Should Staden pursue an appeal, a certificate of appealability should be denied.  An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."[130]  Although Staden has not yet filed a Notice of Appeal, the Court may address whether he would be entitled to a certificate of appealability.[131]  A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right.[132]  In cases where the Court has rejected a petitioner's constitutional claims on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of a denial of constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."[133]  In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."[134]  Reasonable jurists would not debate the denial of Staden's habeas application or the correctness of the procedural or substantive rulings.  Accordingly, if Staden seeks to pursue an appeal in this case, a certificate of appealability should be denied.

## VI.    RECOMMENDATION

As this Court is barred from reviewing Petitioner Dallas Staden's claim of cumulative error and two arguments regarding the Sixth Amendment right the self-representation, which are

---

[130] 28 U.S.C. § 2253(c)(1)(A).

[131] *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

[132] 28 U.S.C. § 2253(c)(2).

[133] *Ruiz v. Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006).

[134] *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

procedurally defaulted, and as Staden's other claims fail on the merits, **IT IS RECOMMENDED**

that the Petition for Writ of Habeas Corpus by a Prisoner in State Custody, filed by Dallas Staden,

be **DENIED** and that this proceeding be **DISMISSED WITH PREJUDICE**.

      **IT IS FURTHER RECOMMENDED** that, if Staden seeks to pursue an appeal in this

case, a certificate of appealability be denied.

      Signed in Baton Rouge, Louisiana, on May 22, 2023.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**